**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Andre Nicholas Crawford, Appellant.

Appellate Case No. 2018-001216

———————

Appeal From Colleton County
Perry M. Buckner, III, Circuit Court Judge

———————

Unpublished Opinion No. 2021-UP-198
Heard March 3, 2021 – Filed June 9, 2021

———————

**AFFIRMED**

———————

Chief Appellate Defender Robert Michael Dudek, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown, and
Senior Assistant Attorney General W. Edgar Salter, III,
all of Columbia; and Solicitor Isaac McDuffie Stone, III,
of Bluffton, for Respondent.

———————

**PER CURIAM:** Andre Nicholas Crawford appeals his conviction for murder, attempted murder, possession of a weapon during the commission of a violent crime, and obstruction of justice. He argues the trial court erred by admitting Bruce Martin's (Victim's) identification of him as the shooter during a law enforcement photographic lineup and by admitting his in-court identification because the identification was unduly suggestive and conducive to irreparable misidentification. We affirm.

We find the trial court did not abuse its discretion by finding the photographic lineup procedures were not unnecessarily suggestive. *See State v. Moore*, 343 S.C. 282, 288, 540 S.E.2d 445, 448 (2000) ("Generally, the decision to admit an eyewitness identification is at the trial [court's] discretion and will not be disturbed on appeal absent an abuse of such, or the commission of prejudicial legal error."); *State v. Wyatt*, 421 S.C. 306, 310, 806 S.E.2d 708, 710 (2017) ("When a defendant challenges the admissibility of a witness's identification, trial courts employ a two-pronged inquiry to determine whether due process requires suppression."); *id.* ("First, the court must determine whether the identification resulted from 'unnecessarily suggestive' police identification procedures." (quoting *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972))); *id.* at 311, 806 S.E.2d at 710 (providing the second prong requires the trial court to "determine 'whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed.'" (quoting *State v. Liverman*, 398 S.C. 130, 138, 727 S.E.2d 422, 426 (2012))). Detective Kurt Wallace testified he showed Victim lineups on two occasions. Each lineup was a six-person photograph array that included persons with characteristics similar to Crawford's. Prior to the first lineup, Detective Wallace visited Victim in his hospital room twice. During Detective Wallace's initial visits, Victim was in critical condition following the shooting and was unable to complete a lineup. When Victim became able to complete a lineup, he identified Crawford as someone "involved that was in a close proximity [to] the situation." Subsequently, Detective Wallace conducted a wellness check on Victim, but he did not present a second lineup. Over a week later, Victim contacted Detective Wallace to tell him he remembered Crawford was the man who shot him. We find the foregoing supports the trial court's conclusion that the police identification procedures were not unduly suggestive because Victim initiated the second lineup after positively identifying the shooter of his own volition.

In addition, we find the trial court did not abuse its discretion under the second prong because the evidence presented at trial supports the trial court's admission of Victim's identification. *See Liverman*, 398 S.C. at 138, 727 S.E.2d at 426 ("Under

the totality of the circumstances, the factors to be considered in assessing the reliability of an otherwise unduly suggestive identification procedure are: (1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation."). First, Victim stated the area where the shooting took place was illuminated and he could see Crawford. Second, Victim testified that he "got a very good look" at Crawford and was employed as a security guard responsible for keeping watch that night. Third, Victim testified he already knew Crawford before the shooting took place; thus, he was not describing an unknown perpetrator but identifying someone he knew. *See id.* at 141, 727 S.E.2d at 427 ("[T]he fact that an identification witness knows the accused remains a significant factor in determining reliability. The suggestive nature of a show-up is mitigated by the witness's prior knowledge of the accused."). Fourth, Victim stated he was "100% sure" Crawford was the shooter. Fifth, Victim voluntarily contacted Detective Wallace and told him he knew who shot him a month after the shooting occurred. Although the last factor weighs in Crawford's favor, the evidence presented at trial supports the trial court's admission of Victim's in-court and photographic lineup identifications. *See State v. Moore,* 343 S.C. 282, 286, 540 S.E.2d 445, 447 (2000) ("An in-court identification of an accused is inadmissible if a suggestive out-of-court identification procedure created a very substantial likelihood of irreparable misidentification."). Based on the foregoing, we find the trial court did not abuse its discretion in admitting Victim's identification of Crawford.

**AFFIRMED.**

**LOCKEMY, C.J., and HUFF and HEWITT, JJ., concur.**